This deed, from the copy produced, does not appear to have been proved as the law requires before it could be admitted to registration; but as it should have been, it is said we ought to presume that the officer would not have put it on his books without previous probate. We are not of that opinion, nor do we believe the doctrine of presumption will warrant such an idea; if it does not, the reason and policy of the law, with respect to the registration of deeds, would be averse to such a presumption. No doubt but instances have and may occur where instruments of writing have been copied on the register's books, which the law has not directed to be placed there. The register is not by *Page 113 
law authorized to take probates; this power is given to other officers; registers may think themselves authorized to copy writings offered, into their books upon such evidence as shall be produced; or perhaps without any, for the lawful fee, believing it not their province to judge of the legality of probates. Upon the death or resignation of a register, his books are handed over to his successor, who would no doubt certify any instrument copied on his books in the manner he might find it. If no probate appeared he could not certify one, if otherwise he could certify it.
The register is a ministerial officer whose acts in this respect are not to be viewed in the light of interlocutory steps in a suit at law, as to which presumption might be raised after a final determination of the cause.
Registration is the ultimate design of the law as to the preservation of the intention of the parties; there is no other act to be done which would show that probate had been made, for it cannot be dispensed with.
As a necessary measure to preserve the purity and verity of papers of this kind, it seems necessary it should appear that probate was made, otherwise a copy cannot be received as evidence. Upon the defendant's failing in this chain of title he resorted to another, the evidence of which was produced.
A judgment was obtained by Joseph Beard against Stockley Donelson, upon which a. fieri facias issued for $6.22½, which was levied on the above 5000 acres of land, and sold for $110 to Andrew Jackson, who obtained a sheriff's deed, dated April 13, 1801. Jackson gave Charles M'Clung a power of attorney to sell this land or a part of it.